IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARCUS CHILDRESS, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 24-CV-2210 |
| | : | |
| MS. GINA CLARK, *et al.*, | : | |
|     Defendants. | : | |

<u>MEMORANDUM</u>

**BAYLSON, J.**                                                                            **JULY 16, 2024**

       Plaintiff Marcus Childress, a convicted and sentenced inmate who is currently incarcerated at SCI Chester, brings this *pro se* civil action against the Pennsylvania Department of Corrections ("DOC"), Wellpath Medical Services (the medical contractor for the prison), and Superintendent Gina Clark. Childress seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Childress leave to proceed *in forma pauperis* and dismiss his Complaint in part. Childress will be given the option of filing an amended complaint or proceeding at this time on his remaining, well-pled claims.

I.      **FACTUAL ALLEGATIONS**

       Childress previously suffered a gunshot wound to the right side of his head and was diagnosed with traumatic brain injury ("TBI"). (Compl. at 5.) He asserts that his hand is partially paralyzed, he has a foot drop in his left foot, and the mobility in his fingers is "next to none." (*Id.*) Childress alleges that since October 8, 2023, "Wellpath medical staff has ignored specific orders from [his] neurologist and has neglected to give [him] proper PT." (*Id.*) In that regard, he indicates that he was prescribed physical therapy by an "outside neurology specialist" but was nevertheless deprived of that treatment. (*Id.* at 7.) Although it appears he received

therapy for approximately one month after he filed a grievance, he claims that the sessions stopped in February 2024. (*Id.*) Childress further alleges that he is being housed on a unit "without a handicap accessible shower." (*Id.* at 5.) After filing a grievance, Childress was told on April 13, 2024 that a handicapped shower chair would be placed on his block, but this never happened. (*Id.* at 7.)

Based on those allegations, Childress raises constitutional claims pursuant to 42 U.S.C. § 1983 for deliberate indifference to his serious medical needs and claims under the Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA") based on the denial of a handicapped accessible shower. (*Id.* at 3, 5.) Childress seeks damages on his claims. (*Id.* at 5.)

## II.    STANDARD OF REVIEW

The Court will grant Childress leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[1] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that]

---

[1] However, as Childress is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'"

*Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d

768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

As Childress is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8

F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc*., 704 F.3d 239, 244-45 (3d

Cir. 2013)).

## III.   DISCUSSION

### A.   ADA and RA Claims

The Court "consider[s] the [ADA and RA] claims together because the substantive

standards for determining liability are the same."  *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285,

288 (3d Cir. 2019).  "To state a claim under either the ADA or the RA, [a plaintiff] must allege

that he is a qualified individual with a disability, who was precluded from participating in a

program, service, or activity, or otherwise was subject to discrimination, by reason of his

disability."  *Id.* at 288-89 (footnote omitted).  A plaintiff "must also show intentional

discrimination under a deliberate indifference standard [if] he seeks compensatory damages."  *Id.*

at 289.  This standard may be satisfied with allegations that the defendant failed to act despite

knowledge that a federally protected right was substantially likely to be violated.  *Id.* at 92.

A "disability" is defined as "a physical or mental impairment that substantially limits one

or more major life activities of such individual . . . ."  42 U.S.C. § 12102(1)(A).  "[M]ajor life

activities include, but are not limited to, caring for oneself, performing manual tasks, seeing,

hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning,

reading, concentrating, thinking, communicating, and working."  *Id*. at § 12102(2)(A).  Neither

Title II of the ADA nor RA provide for individual liability.  *See Kokinda v. Pa. Dep't of Corr.*,

779 F. App'x 938, 942 (3d Cir. 2019) (*per curiam*) ("Kokinda's claims for individual damages liability under Title II of the ADA fail for the simple reason that there is no such liability."); *Bowens v. Wetzel*, 674 F. App'x 133, 136 (3d Cir. 2017) (*per curiam*) ("[T]he District Court could have properly followed the holdings of those circuits which have concluded that there is no individual damages liability under Title II of the ADA, which provides an additional basis to affirm the dismissal of this claim."); *A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 804 (3d Cir. 2007) (stating that "suits may be brought pursuant to Section 504 against recipients of federal financial assistance, but not against individuals").  Accordingly, the Court understands Childress's ADA and RA claims to be asserted only against the DOC based the failure to accommodate his disability so he could access the shower.[2]

Although his allegations are sparse, Childress has plausibly pled that he is disabled because he alleges that he has been diagnosed with TBI, has a foot drop in his left foot, and that his left hand is partially paralyzed such that he has almost no mobility in his fingers.  (Compl. at 5.)  Additionally, "the provision of a shower is a service, program, or activity" for purposes of the ADA and RA.  *Furgess*, 933 F.3d at 290.  Childress has also plausibly pled a basis for

---

[2] Decisions about a prisoner's medical treatment do not give rise to claims for disability discrimination under the ADA or RA.  *See Kokinda v. Pa. Dep't of Corr.*, 663 F. App'x 156, 159 (3d Cir. 2016) (*per curiam*) ("The District Court was also correct to conclude . . . that Kokinda's ADA claims fail because the ADA prohibits disability-based discrimination, not inadequate treatment for the disability." (footnotes and internal quotations omitted)); *Iseley v. Beard,* 200 F. App'x 137, 142 (3d Cir. 2006) (*per curiam*) (prisoner failed to allege ADA violation where he alleged "that he was denied medical treatment for his disabilities, which is not encompassed by the ADA's prohibitions"); *Fitzgerald v. Corr. Corp. of Am.,* 403 F.3d 1134, 1144 (10th Cir. 2005) ("[P]urely medical decisions . . . do not ordinarily fall within the scope of the ADA or the Rehabilitation Act."); *Burger v. Bloomberg,* 418 F.3d 882, 883 (8th Cir. 2005) (*per curiam*) (medical treatment decisions are not a basis for ADA claims); *Bryant v. Madigan,* 84 F.3d 246, 249 (7th Cir. 1996) (holding that "the [ADA] would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners").  Accordingly, the Court does not understand Childress's ADA and RA claims to be based on any failure to provide physical therapy prescribed by the neurologist, which he in any event attributes to Wellpath.

deliberate indifference at this early stage of the case because he contends that after he filed a grievance, he was told that a handicapped chair would be provide to him, but that did not occur. (Compl. at 7.)  Although it is unclear how long Childress was denied a handicapped accessible shower, at a minimum he did not have shower services because of his disability for one-and-a-half months.  (*Id.*)  Based on these facts, Childress has adequately pled a basis for proceeding on his ADA and RA claims based on the failure to provide him with a handicapped-accessible shower.  *Furgess*, 933 F.3d at 292.

### B.      Section 1983 Claims

Childress also asserts constitutional claims pursuant to § 1983, the vehicle by which federal constitutional claims may be brought in federal court.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  To state an Eighth Amendment claim based on the failure to provide medical care, which is what Childress alleges here, a prisoner must allege facts reflecting that prison officials were deliberately indifferent to his serious medical needs.  *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).

A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he

must also draw the inference." *Farmer*, 511 U.S. at 837. In the context of correctional medical care, deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). In contrast, allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation, *see Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004), and "[w]here a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners." *Hayes v. Gilmore*, 802 F. App'x 84, 88 (3d Cir. 2020) (*per curiam*). Further, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with . . . deliberate indifference." *Spruill*, 372 F.3d at 236. For the following reasons, the Complaint fails to state a § 1983 deliberate indifference claim against the named Defendants.

### 1. Claims Against the DOC

The Eleventh Amendment bars suits against a state in federal court when the state has not waived that immunity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989). The Commonwealth of Pennsylvania has not waived that immunity here. *See* 42 Pa. Cons. Stat. § 8521(b). Additionally, the Commonwealth is not considered a "person" for purposes of § 1983. *See Will*, 491 U.S. at 69. Since the DOC is a department of the Commonwealth, these principles preclude Childress from bringing a § 1983 claim against it. *Lavia v. Pa., Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (explaining that, "[b]ecause the Commonwealth of Pennsylvania's

Department of Corrections is a part of the executive department of the Commonwealth, it shares

in the Commonwealth's Eleventh Amendment immunity" and is also not considered a person for

purposes of § 1983); *see also Pettaway v. SCI Albion*, 487 F. App'x 766, 768 (3d Cir. 2012) (*per*

*curiam*) ("[A]s a state agency and the prison it administers, the Department of Corrections and

SCI-Albion are not 'persons' and thus cannot be sued under 42 U.S.C. § 1983.").  The Court will

therefore dismiss Childress's § 1983 claims against the DOC, to the extent he intended to bring

any, with prejudice.

### 2.  Claims Against Clark

In a § 1983 action, the personal involvement of each defendant in the alleged

constitutional violation is a required element, and, therefore, a plaintiff must allege how each

defendant was involved in the events and occurrences giving rise to the claims.  *See Rode v.*

*Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).  "Suits against high-level government

officials must satisfy the general requirements for supervisory liability."  *Wharton v. Danberg*,

854 F.3d 234, 243 (3d Cir. 2017).  There are "two general ways in which a supervisor-defendant

may be liable for unconstitutional acts undertaken by subordinates."  *Barkes v. First Corr. Med.,*

*Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S.

822 (2015).  First, a supervisor may be liable if he or she "'with deliberate indifference to the

consequences, established and maintained a policy, practice or custom which directly caused

[the] constitutional harm."  *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*,

372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)).  "Second, a supervisor may be

personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed

others to violate them, or, as the person in charge, had knowledge of and acquiesced in the

subordinate's unconstitutional conduct."  *Id.*

Childress does not allege how Superintendent Clark was involved in the events that give rise to his deliberate indifference claims, especially since she is not a medical professional, so it is unclear how, if at all, she would be involved in matters related to his care.  To the extent Childress named Superintendent Clark as a Defendant because she is responsible for managing SCI Chester, this fact alone is an insufficient basis upon which to bring a claim against her.  *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation).  Childress's claims against Superintendent Clark are therefore not plausible because Childress has failed to allege how the Superintendent was personally involved in the alleged constitutional violation.  *See Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original).

### 3.  Claims Against Wellpath

Rather than suing the individuals who allegedly denied him medical care, Childress sued Wellpath, the medical contractor at the prison.  To plead a § 1983 claim against a medical contractor who provides medical services at a prison such as Wellpath, a plaintiff must satisfy the standards for alleging municipal liability, which requires him to allege that the contractor's policy or custom caused the violation of his constitutional rights.  *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978); *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003) (applying *Monell* to claims against medical contractor); *Callahan v. Clark*, No. 120-00305, 2023 WL 5596269, at *15 (W.D. Pa. Aug. 14, 2023), *report and recommendation adopted*, No. 20-305, 2023 WL 5580998 (W.D. Pa. Aug. 29, 2023)

("Private corporations that contract with the state to provide services typically provided by the state are also subject to potential liability based on the principles established by *Monell*, but like municipal entities, private corporations are not liable under § 1983 based on a theory of respondeat superior."). "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish . . . policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id*. (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). A plaintiff may also state a basis for claim in this context by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).

Childress may not base his § 1983 claims against Wellpath solely on the fact that it employs individuals who failed to provide him with physical therapy as prescribed by a neurologist. And nothing in Childress's Complaint suggests that the conduct of which he complains was caused by a policy or custom or deliberate indifference otherwise attributable to Wellpath. Accordingly, Childress has failed to state a plausible deliberate indifference claim against Wellpath.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Childress leave to proceed *in forma pauperis*, dismiss his § 1983 claims, and permit him to proceed against his ADA and RA claims against the DOC based on the failure to provide him with a handicapped-accessible shower. The Court will give Childress the option of either filing an amended complaint in the event he believes he can articulate additional facts that could cure the defects in his § 1983 claims against Superintendent Clark and Wellpath or, alternatively, proceeding on his remaining ADA and RA claims against the DOC at this time.  An order follows, which provides additional instructions for proceeding.

BY THE COURT:

/s/ Michael M. Baylson

_____

MICHAEL M. BAYLSON, J.